## Yowell v. S. B. Bottom and Hubert McGoodwin, Administrators, et al.

(Decided May 15, 1917.)

### Appeal from Marion Circuit Court.

1. **Trial—Equity Case—Transfer to Common Law Docket—Issue of Fact to Jury—Practice.**—Where, in an equitable action brought to settle an estate and to enforce a recovery for services rendered the decedent, plaintiff asks and obtains an order referring to a jury the issues of fact formed by the pleadings, it is unnecessary to determine whether it would have been proper to transfer the case to the ordinary docket for a general finding by the jury on the whole case, since plaintiff cannot complain because the court complied with the order obtained on his motion and submitted only such issues of fact instead of the whole case to the decision of the jury.

2. **Appeal and Error—Equity—Issue of Fact to Jury—Sufficiency of Evidence.**—In such an action, evidence examined and held that the finding of the jury that the decedent did not agree with plaintiff that she would deed or will him her property in consideration of the services rendered by him, was not flagrantly against the evidence.

3. **Executors and Administrators—Limitation of Actions—Action For Services Based on a Promise to Deed or Will Property—Adverse Finding of Jury—Effect on Question of Limitation.**—In an action to recover for services rendered the decedent, based on the decedent's failure to comply with an alleged agreement to convey or devise her property to plaintiff, evidence to the effect that decedent, shortly before her death, promised to make such conveyance or devise, will not suspend the running of the statute of limitation where the jury found that no such agreement was made.

4. **Executors and Administrators—Limitation of Action—Action on Implied or Express Oral Contract—Time.**—An action for services rendered the estate of the decedent, based on an implied contract or an express oral contract, is barred after the lapse of five years from the time the cause of action accrued, and the right to recover is confined to such services as were rendered within five years next preceding the institution of the action.

5. Executors and Administrators—Appeal and Error—Equity—Issue of Fact to Jury—Sufficiency of Evidence.—In an action to enforce a claim for services against the estate of the decedent, held that the finding of the jury that the services were rendered with the intention, expectation and agreement on the part of both parties that they should be paid for, was not flagrantly against the evidence.

6. Executors and Administrators—Contracts—Validity—Public Policy. —A contract by which a woman agrees to pay a man for services rendered in the management of her estate is not contrary to public policy, merely because, though unmarried, they both lived under the same roof, where it is not shown that their relations were otherwise improper and formed a part of .the consideration for the contract.

S. A. RUSSELL, P. K. McELROY and L. S. PENCE for appellant.

H. W. RIVES, ROBERT HARDING and EMMET PURYEAR for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSION—Affirming both on the original and cross appeals.

William M. Yowell brought this suit against Florrie Hood's administrators to settle her estate, and to enforce a claim for $24,666.66 for alleged services rendered by him in the management of her estate during a period of twelve and one-half years. From a finding in his favor for $2,500.00 he appeals, and the administrators prosecute a cross-appeal.

The facts are as follows: Some years prior to the death of Florrie Hood's mother, Julia Ann Hood, William M. Yowell went to the latter's home to live, and thereafter managed her business until her death in the year 1902. Mrs. Julia Ann Hood left property valued at between $25,000.00 and $30,000.00. She had two daughters, Bettie Hood, who married Col. Shelby Irvine, and Florrie Hood, who continued to occupy the homestead until her death in May, 1915. From letters in the record it appears that a mutual affection had existed between Yowell and Florrie Hood for a great many years, and the attachment continued until Florrie Hood's death. After the death of Julia Ann Hood, Yowell continued to live in the same house with Florrie Hood and to manage her estate. Soon after the death of her mother, numerous creditors of Mrs. Irvine sought to subject her interest in her mother's property. The indebtedness was com-

promised for the sum of $7,776.30. In the settlement of Mrs. Hood's estate her property was sold by the master commissioner, and the greater portion thereof was purchased by Florrie Hood for the sum of $24,790.45. To carry out this arrangement it was necessary for Florrie Hood to give bond and to borrow about $6,500.00, which she was enabled to do by the efforts of Yowell. After the purchase by Miss Hood, Yowell sold off certain portions of the real estate for the purpose of discharging her debts, thus leaving to her a tract of 41 acres of land, lying in the city limits of Lebanon, on which was a dwelling house and other improvements, and ten negro tenant houses; also a tract of 52 acres, near the city limits, on which there were two tenant houses; also two other tenant houses near the depot in Lebanon; and a substansial balance in bank. This property at the time of Miss Hood's death was worth between $30,000.00 and $40,-000.00. During the same period he constructed a new barn on the home place, built and repaired the fences on the different tracts of land, looked after the cultivation of the crops, bred the mares, collected the rents from negro tenants, and performed such other services as are usually performed by an overseer or manager.

In this petition Yowell fixed the value of his services at $2,000.00 per year, and sought a recovery on three grounds: (1) A contract by which Florrie Hood employed him and agreed to pay him the value of his services; (2) an agreement by her to devise to him all of her property, in consideration of services which he rendered; and (3) an agreement to convey him her real estate in payment for his services. By way of defense, the defendants pleaded, in substance, that Yowell and the decedent, though both were single and unmarried, occupied the same house because of their mutual attachment, and were generally recognized as man and wife; that the services which he rendered were prompted solely by such attachment and relation, and were not based on any contract of employment, or any promise or expectation of pecuniary reward.

On the motion of Yowell, the issues of fact raised by the pleadings were referred to a jury, which answered the interrogatories as follows:

"1st. Were the services claimed to have been rendered by Wm. M. Yowell for the decedent Florrie Hood rendered with the expectation on the part of Wm. M.

Yowell, that they would be paid for, and with the intention on the part of said Hood to pay for said services?

"Ans.—Yes.

"2nd.  Was there an agreement between them that said services would be paid for?

"Ans.—Yes.

"3rd.  Did Miss Florrie Hood agree with Wm. M. Yowell that she would deed or will him her property or any part of it in consideration of services rendered to her by said Yowell?

"Ans.—No.

"4th. If you answer either of the first three questions in the affirmative, then you will answer the following questions:

"5th.  What would be a reasonable and fair compensation per year to said Wm. Yowell for said services as you believe from the evidence were rendered by the said Yowell to said Hood under the circumstances set out in questions one and two, during the years from October, 1902, to May 15, 1915?

"Ans.—$500.00.  L. T. Yankey, one of the jury.

"6th.  What in your opinion from the evidence would be a reasonable and fair compensation for such services per year for the past five years next before May 15, 1915?

"Ans.—$500.00.  L. T. Yankey, one of the jury.

Upon this finding of facts, the trial court entered judgment for Yowell in the sum of $2,500.00, on the theory that his claim for services rendered more than five years prior to the institution of the action was barred by the statute of limitation.

On the original appeal it is insisted that the trial court erred in submitting only issues of fact to the jury, instead of requiring it, under proper instructions, to return a verdict on the whole case.  Whether or not, in view of the fact that the suit was brought in equity for the purpose of settling the decedent's estate, it would have been proper to transfer the case to the ordinary docket for a general finding by the jury upon the whole case, it is unnecessary to determine.  The order of reference is as follows:

"Upon the further motion of Wm. M. Yowell the issue of fact to be formed by the pleadings is hereby referred out before a jury upon the claim filed by said Wm. M. Yowell."

This order cannot be regarded as a transfer of the case to the ordinary docket for purposes of a jury verdict on the whole case, but as a mere order submitting certain issues of fact to the decision of the jury; and, since the order was made on Yowell's motion, he cannot complain because the court complied with the order and submitted only such issues of fact instead of the whole case to the decision of the jury.

It is next insisted that the answer of the jury to the third interrogatory is flagrantly against the evidence. There is evidence to the effect that, within five years prior to her death, decedent had a will prepared, by which she devised her property to Yowell, but this will was destroyed. It is also shown that she consulted an attorney for the purpose of having him prepare a deed, conveying her property to Yowell, but the transaction was never carried out. It may also be conceded that she stated in each instance that it was her purpose to compensate Yowell for his valuable services. Where a claim for services is based on the failure of a decedent to convey or devise property it is not sufficient merely to show that the decedent intended to make a deed or will in recognition of such services, but it must further appear that the services were rendered under an agreement by which the decedent promised to compensate the claimant by deed or will. In view of the fact that the testimony on the question is entirely consistent with the theory that decedent believed Yowell deserving of compensation, and, therefore, contemplated making the deed or will for that purpose, we are not prepared to say that the finding of the jury that there was no agreement between the decedent and Yowell that she would deed or will him her property in consideration of his services, is flagrantly against the evidence.

Another ground urged for reversal on the original appeal is that the court erred in limiting the recovery to such services as were performed within five years next preceding the institution of the action. In this connection the point is made that the five-year statute of limitation does not apply because the decedent, shortly before her death, promised both to deed and devise her property to Yowell, and, this being true, the statute did not begin to run until she failed to keep her promise. It must not be overlooked, however, that the issues of fact were properly submitted to the jury, and while the jury

found that the services were rendered with the intention, expectation and agreement on the part of both parties that they should be paid for, it also found that there was no agreement by which appellant rendered the services in consideration of decedent's promise to convey or devise him her property. It necessarily follows that no right of recovery can be predicated on such agreement, and the facts relied on are not, therefore, sufficient to prevent the statute of limitation from running; and, with this feature eliminated, we have only an implied or express oral contract which was barred after the lapse of five years from the time the cause of action accrued. Kentucky Statutes, section 2515. The trial court did not err, therefore, in confining appellant's right of recovery to such services as were rendered within five years next preceding the institution of the action.

On the cross-appeal, it is insisted that the finding of the jury in answer to interrogatories 1 and 2 is flagrantly against the evidence. The evidence on this question is very voluminous, and we deem it unnecessary to set it out at length. It is sufficient to say that after a careful consideration of all the facts and circumstances developed by the record, we have reached the conclusion that the jury's findings are fully supported by the evidence.

Nor do we find any merit in the contention that public policy forbids the allowance of appellant's claim.

There are cases holding that, where illicit relations between a man and woman form part of the consideration for a contract, such contract is contrary to public policy, and will not be enforced, but that rule has no application to this case. With the exception of the fact that they were both single and lived in the same house, no witness testifies to any acts of impropriety on the part of the decedent and appellant. Viewing the case in the light of the age of the parties and of the decedent's eccentricities, we do not feel justified in presuming that their relations were such as are ordinarily maintained by husband and wife. Furthermore, there is nothing in the record from which it can be assumed that if their relations were improper they formed any part of the consideration for the agreement between them with reference to appellant's services. Under these circumstances, we perceive no principle of public policy that forbids a recovery in this case.

Other errors are relied on, but we do not deem them sufficient to merit further discussion.

Judgment affirmed both on the original and cross appeals.